# EILAND, ADM'R. v. RADFORD.

1. In ascertaining whether a contract is a mortgage, or a conditional sale, the form of the contract will be controlled by the intention of the parties.
2. Some of the tests by which it may be ascertained in a doubtful case, whether a mortgage, or conditional sale was intended, are—did the relation of debtor and creditor subsist before the alledged sale—did the transaction commence by a proposition to lend, or borrow money—was there a great disparity between the value of the property and the price agreed to be given for it—did the vendor continue bound for the debt—these facts, or any of them, if found to exist, go far to show, that a mortgage was intended, and not a conditional sale.
3. A bill of sale, with a defeasance, that if the purchase money is repaid at a stipulated time, the slave will be delivered, is on its face a conditional sale and not a mortgage.

Error to the Chancery Court at Cahawba.

THE bill was filed by the intestate of the plaintiff in error, in 1836, and charges, that in 1827, or 1828, he was under the necessity of raising money, and applied to the defendant, who offered to let him have $450, the amount wanted, provided the complainant would give him a *lien* on a negro man, by the name of Uriah. That accordingly, the defendant received the slave and paid him the money, taking a bill of sale, for the slave, and executing at the same time a defeasance to return the slave, if the money was repaid in twelve months. That the intention of the parties at the time, was to create a mortgage, and not to make a conditional sale; that he was forced by his necessities to make the arrangement, and would not at the time, have taken $1000 for the slave. The bill prays an account, &c.

The answer denies all the material allegations of the bill, and insists, that it was an absolute sale of the slave, at a full price, with a right to repurchase.

The bill of sale reads thus:

Dec. 15th, 1829. Received of William Radford five hundred dollars, in full payment of a certain negro man named

Uriah, aged about twenty-five years, which negro I warrant to be sound, and the right forever to defend, from our heirs, assigns, executors, or from any lawful claim from any person; for which consideration we have affixed our hands and seals, the day and date above written.

G. A. MOFFATT, [Seal.]

M. A. LEA, [Seal.]

The defeasance is in these words—

This is to certify, that I oblige myself to deliver to G. A. Moffatt, a certain negro man, named Uriah, which I purchased of him and M. A. Lea, provided, he advances me five hundred dollars, by the 15th of February, 1831.

WM. RADFORD.

Much testimony was taken, which need not here be set out, as the substance of that, which is material, is recited in the opinion of the Court. The Chancellor at the hearing dismissed the bill, from which decree this writ is prosecuted.

EDWARDS, for the plaintiff in error, argued, that this was the case of a pledge for a loan of money, and that the right to redeem was a necessary incident of the contract. That the rule in Chancery was, once a mortgage, always a mortgage; and that it was not the less a mortgage, because the complainant was not liable for the debt. He insisted, that the parol testimony, as well as the written evidence, showed, that this was not a conditional sale, and that the difference in the price asked for the slave, and that received, was a consideration to support the right to redeem. He cited, 2 Johns. Ch. 62; 2 Story's Eq. 297; 1 Johns. Rep. 599; 6 Id. 24; 10 Id. 483; 2 Porter, 426; 5 S. & P. 67; 4 Bibb, 327; 2 Cowen, 324; 3 Yerger, 525; 3 J. J. M. 356; 1 Vesey, 406; 1 Peere Wms. 290; 2 Vernon, 84; 1 Powell, 373.

J. B. CLARKE, contra. All the material allegations of the bill are denied, and the proof taken in the cause, so far from sustaining the bill, supports the answer, and establishes, that it is the plain case of an absolute sale, with a right to repurchase. He cited, 4 Kent's Com, 144; 2 Porter, 414; 7 Cranch, 218; 2 Edwards, 138; 2 Am. Eq. Dig. 182; 1 Dev. 373; 5 Leigh, 434; 5 S. & P. 80; 5 G. & J. 76.

ORMOND, J.—The bill is filed for the purpose of redeeming a slave, alledged to have been mortgaged by the complainant's intestate, to the defendant, and for an account. It is not alledged, that there was a technical mortgage executed between the parties, but it is insisted, that the bill of sale, considered in connection with the defeasance, establishes, that the transaction was either a pledge of the slaves, or a mortgage, as it shows, that there was a right to redeem, and that such was the intention of the parties.

The answer denies all the material allegations of the bill, and insists, that it was an absolute purchase of the slave, with a right secured to the plaintiff to repurchase, at a stipulated time. The bill of sale, and defeasance, when considered together, do not in our opinion, establish the proposition, that this was either a pledge, or mortgage. The bill of sale is in the usual form, and the defeasance recites the purchase, and promises to deliver the slave to the vendor, provided he advances five hundred dollars, which was the amount of the purchase money as recited in the bill of sale, by the 15th February, 1831. This, upon its face, imports a conditional sale of the slave, but as it has been held by this, and other Courts, that a deed absolute on its face, may, by parol, be shown to have been intended by the parties to operate as a mortgage, we proceed to consider the evidence taken in the cause.

Before proceeding to the examination of the testimony, it is proper to remark, that whether this contract is to be considered as an absolute sale, with a right to repurchase, or a pledge, or mortgage, depends upon the intention of the parties, to be ascertained by the circumstances attending the transaction; and although it is difficult to establish fixed rules, by which to ascertain the true character of such contracts, there are some tests which may be successfully applied in doubtful cases. Among these, the following may be mentioned: Did the relation of debtor, and creditor, subsist before the alledged sale? Did the transaction commence, by a proposition to lend, or borrow, money? Was there a great disparity between the value of the property, and the price agreed to be given for it? Did the vendor continue bound for the debt? When any of these facts are found to exist, they go far to show, in a doubtful case, that a mortgage was intended, and not a conditional sale.

From the evidence, it appears, that the proposition came from the complainant, who, in company with another person, went to the house of the defendant to sell the slave. The price he put upon the slave was $550. The defendant would not give more than $500, which the former agreed to take, provided he had the privilege of *redeeming* him, in twelve, or fourteen months, which was assented to, the negro delivered, and the money paid; $400 at that time, and the residue soon after. Several witnesses who were examined, say, that the slave was not worth more than $500 at the time of the sale. One witness, Martin A. Lea, who joined the complainant in making the bill of sale, says, he was worth from five to six hundred dollars. In addition, the complainant stated, the day after this transaction, that he had sold the slave to defendant.

It is impossible, we think, to come to any other conclusion, than, that this was an absolute sale, with the right of repurchase. The witness who was present at the time of the sale, says, it is true, that the complainant was to have the right to *redeem*, but that he did not use this term in its technical sense, is evident, as he says, there was no contract between the parties, but that disclosed by the written agreement. The price given, appears to have been a fair price for the negro at the time; and during the time, within which the repurchase could be made, the defendant encountered the risk of the death of the slave, without any corresponding right of getting back the purchase money. It is therefore, we think, perfectly clear, that the parties understood it to be a conditional sale, and if any doubt could remain, it would be removed by the deposition of the witness, Hinton, who deposes, that about the time when the privilege of repurchasing the slave was about to expire, the agent of the complainant offered to sell him to the witness at $550, observing, that if he was not sold the defendant would get him for $500. See the case of Poindexter v. McCommon, 1 Dev. Eq. Rep. 373, and Kroesen v. Seevers, 5 Leigh, 434.

It is indeed difficult to suppose, in any case, where the property supposed to be mortgaged, is of a perishable nature, as slaves, that a mortgage is intended by the parties, when the supposed mortgagor does not continue bound for the purchase money, and the contract therefore destitute of mutuality. See

ALABAMA.

the remarks of Judge Pendleton in Chapman v. Turner, 1 Call, 293. In every view we can take of this case, we are clear that the parties did not intend to create a mortgage.

Let the decree of the Chancellor be affirmed.