# McKINSTRY v. CONLY.

1. When the evidences of debt are delivered up to the debtor, upon a contract importing on its face a sale of personal property, and the debt admitted to be satisfied, nothing short of the clearest, and most convincing proof, that a remedy existed for its recovery, would suffice to convert such a contract into a mortgage.

2. A written contract, by which one bound himself to "re-sell" certain slaves, which he had purchased, and for which he had received a bill of sale, cannot be contradicted by parol evidence, unless the contract was obtained by fraud, or entered into by mistake, or surprise.

3. An allegation in a bill, that by the term "re-sell," the parties meant *reconvey*, is not sufficiet to authorize the introduction of parol proof, contradicting the written instrument.

4. A court of equity will relieve against a sale of the equity of redemption to the mortgagee, for a grossly inadequate price.

Error to the Chancery Court of Mobile.

THE bill was filed by the plaintiff in error, to redeem certain slaves upon an alledged mortgage, existing between the defendant in error, and one Giles M. Mallett, a bankrupt, whose interest the plaintiff asserts by a purchase, and conveyance from the assignee in bankruptcy.

The bill charges, that Mallett, being indebted to Conly in the sum of $2,636, for several sums of money before the 28th May, 1839, advanced to him, in order to pay a part of the debt, and to secure the residue, on that day executed to Conly, an instrument which on its face purports to be a bill of sale of four slaves, viz., John, Elsey, a black girl, Elsey, a mulatto, and Sally, a mulatto, but which was in fact designed, and understood by the parties to be, except as to the girl Sally, a mortgage on the slaves, to secure the payment of the sum of $1,876, part of the debt, and to give the instrument the effect of a mortgage, as to the other three slaves, Conly at the same time executed to Mallett, an instrument in writing, whereby he promised that upon payment being made to

him of the sum of $1,876, with interest, he would *re-sell,* meaning thereby *re-convey,* the said three slaves.

The bill contains the necessary allegations of the plaintiff's right to redeem, prays a foreclosure of the mortgage, an account, &c.

Appended to the bill are the following exhibits:

Received from M. J. Conly, three notes made by me, and payable to him, one for $760, one for $640, one for $300, and $936 in cash, in full payment for four slaves (describing them). The three first named, are the same mortgaged to M. J. Conly, under date 27th April, 1839. The title to the above named slaves, I hereby warrant, &c. May 28, 1839.

G. M. MALLETT.

I, Morris J. Conly, do hereby promise to Giles M. Mallett, that upon payment being made to me of the sum of $1,876, with lawful interest from date, I will re-sell to him, if they are in my possession, three of the negro slaves, namely, John, Elsey a black, and Elsey a mulatto girl, more fully described in book, &c. in the clerk's office of Mobile county.

M. J. CONLY.

Mobile, May 28, 1839.

Conly answered the bill, and denied that the defeasance was intended as a mortgage, but was designed to be, what its language imports, a right to re-purchase. That there had previously been a mortgage executed by Mallett to him, on three of the slaves, and that upon the execution of the contract set out in the bill, he gave up all the evidences of debt he had against Mallett, and released him from liability. That then Mallett executed a bill of sale for the slaves, and took from him a power to re-purchase. That the girl Sally never was in his possession, being mortgaged at the time to one Anderson, and that he has sold the mulatto girl Elsey to one Thorington for $550, &c.

The depositions of Mallett and wife were taken, who substantially sustain the allegations of the bill, that the intention of the parties was, that the transaction should have the effect of a mortgage, &c.

The chancellor considered that the proof was inadmissible, as it went directly to contradict the written agreement of the

parties, and dismissed the bill. This is now assigned as error.

W. G. JONES, for plaintiff in error.
DARGAN, contra.

ORMOND, J.—This is an application to redeem certain slaves, in virtue of an alledged mortgage, which, though in the form of an absolute sale, with a right to re-purchase, is alledged in the bill to have been intended to operate as a mortgage.

The allegations of the bill are substantially proved by the depositions of Mallett and his wife; the former having been previously the owner of the property, and all his rights having been transferred to the plaintiff, on his becoming a bankrupt, by the assignee in bankruptcy. On the other hand, the subscribing witness to the bill of sale, states, that he supposed it was an absolute sale, with a right to re-purchase, and heard nothing to the contrary between the parties; and the internal evidence arising out of the transaction itself, and the admitted facts, strongly corroborate the assertion of the defendant in his answer—that the written contract discloses the true character of the agreement of the parties.

It appears there had been a previous mortgage on these slaves, executed by Mallett to the defendant, which was abandoned by the parties, and the contract executed, which it is now insisted was intended to operate as a mortgage. The question here naturally presents itself, why was this change made. If a mortgage was intended, why abandon the one already executed, and substitute another in its stead, importing on its face an entirely different contract, and which could only be established to mean something else, by extrinsic parol proof, of which no one had any knowledge, but the parties themselves.

If it is difficult to suppose Mallett would thus have put himself in the power of Conly it is not the less difficult of solution, why the latter should have delivered up to Mallett all his evidences of debt, if in truth the transaction was intended to be a mortgage. It is a necessary ingredient in a mortgage, that the mortgagee should have a remedy for his debt

against the debtor, the mortgage itself being a mere security for the debt. It is true the mere delivery to Mallett of the evidence of the debt, would not extinguish the debt, if it was not the intention of the parties to do so. But the natural, as well as the legal inference would be, that when the evidence of the debt was delivered up, the debt itself was cancelled. In this case, the supposed mortgagee not only delivered to Mallett his evidence of the debt, but the fact was by him admitted in writing, by his accepting Mallett's receipt of them, as payment for the slaves, and against this written testimony, he had no evidence whatever, either verbal or written, that the debt was not paid. It certainly devolved on the party insisting on this contract as a mortgage, to explain these apparent incongruities; yet no explanation whatever is given in the bill, or by the testimony. In the case of Conway v. Alexander, 7 Cranch, 218, it is considered by Chief Justice Marshall as a controlling fact in cases of this kind, that no evidence of debt is preserved by the supposed mortgagee. When, as in this case, the evidence of debt has been delivered up, and the debt itself admitted to be satisfied, nothing short of the clearest, and most convincing proof, that the party had a remedy, would suffice to convert such a contract into a mortgage. If this contract is *bona fide*, it is in the highest degree improbable, that Conly should have delivered up the evidences of his debt, and still subject himself to the disabilities of a mortgagee, thereby putting it in the power of Mallett, to convert the contract into a mortgage, or rely upon it as a sale with a power of re-purchase, at his pleasure.

There is another aspect of this case, which is entirely decisive. Since the decision of this court in Hudson v. Isbell, 5 S. & P. 67, it has been settled as the law of this court, that a contract absolute on its face, may be shown to have been intended by the parties to operate as a mortgage, and when this is satisfactorily made to appear, effect will be given to the real contract of the parties. This, whether wise or unwise, is now firmly established as an exception to the general rule, that the written contract of the parties, cannot be added to, or contradicted by parol.

The purpose of this bill is not to correct a mistake, and to
86

have a contract reformed, so as to make it speak the true meaning of the parties. It is not alledged, that the contract was put in its present shape, by the fraudulent contrivance of the defendant, or that by mistake of the draughtsman, it was put in its present form. The language of the bill, is, " to give the said instrument the operation of a mortgage, the said Morris J. Conly, at the same time executed to the said Giles M. Mallett an instrument in writing, (describing it,) whereby he promised, he would re-sell, meaning *reconvey*, to the said Giles M. Mallett, the three last mentioned slaves." The plain import of these allegations, is, that the term re-sell, is not in this instrument to be understood in its true sense, but in another entirely different. This cannot be tolerated, as it would effectually annul the rule of evidence above referred to. Conditional contracts, are as much within the protection of the rule, as absolute ones. To hold otherwise, would be to deprive all conditional contracts of the faith now reposed in them. It is true, as already stated, that this, and other courts have held, that an absolute conveyance may be shown by parol evidence, to have been intended as a security merely for the payment of a debt, upon the ground that it does not contradict the written contract, but gives the effect to it the parties designed it should have, and prevents the commission of a fraud. It may perhaps be doubted, whether even this is not an invasion of this salutary rule. But it has never been supposed, that when parties have entered into a written conditional contract, it may be shown by parol proof, an entirely different contract was intended by the parties, without an allegation of fraud, mistake, or suprise. If this can be permitted, we can see no obstacle to an averment, that $1,000 in a bond, or note, means $100, or that a mortgage is an absolute sale.

This question was fully considered by this court, in Hair v. La Brouse, 10 Ala. 554, and previously in Paysant v. Ware & Barringer, 1 Id. 164; see also Hunt v. Rousmaniere, 1 Peters, 13, and Lord Irnham v. Child, 3 Bro. C. C. 92.

It has also been urged in argument, that there was once indisputably a mortgage between these parties, upon these slaves, which was succeeded by this contract, and that it is a maxim of equity, once a mortgage, always a mortgage. This

rule amounts to no more than this, that the court will protect the mortgagor, against contracts entered into with the mortgagee, impairing, or destroying the equity of redemption. From the relative condition of the two parties, it looks with jealousy on all such contracts. It will not tolerate a clause in the mortgage, that the mortgagor shall not redeem, as that is an inseparable incident of the contract; and will relieve against a sale of the equity of redemption for a grossly inadequate price, from the power which the mortgagee has over the mortgagor. [1 Pow. on Mort. 117; Newcomb v. Bonham, 1 Vernon, 8; Wilson v. Troup, 7 Johns. C. 40; Clark v. Henry, 2 Cow. 331; Seton v. Slade, 7 Vesey, 273; Hutchinson's Heirs v. The Bank U. S. 7 Ala. 443.] It has not, however, ever been held, that the mortgagee could not deal with the mortgagor, and make a fair purchase of the equity of redemption, and that such a sale, made for an adequate consideration, would not be supported.

But the entire argument is entirely out of place in this case. The object of the bill, is not to have the benefit of the original mortgage. It is not so much as named in the bill, and is only brought to light by the answer. Nor was the purchase of the plaintiff, of the bankrupt's interest, predicated upon it, but upon the instrument authorizing the repurchase of the slaves. There is no ground, therefore, for the application of the maxim, as the facts upon which it would have to rest, are not put in issue by the bill.

Our conclusion upon the entire case, is, that the decree of the chancellor dismissing the bill must be affirmed.