# WEST AND WIFE vs. HENDRIX.

[BILL IN EQUITY FOR REDEMPTION UNDER ALLEGED MORTGAGE.]

1. *Existing debt necessary to constitute mortgage.*—A conveyance made in satisfaction of a precedent debt, although it may contain a redemption clause, cannot take effect as a mortgage, since a mortgage is impossible where no debt exists.

2. *Agreement to re-sell does not make absolute deed mortgage.*—When a deed is made for a consideration paid at the time,—whether the payment is made in cash, or by the surrender and satisfaction of a precedent debt,—an agreement on the part of the vendee to allow the vendor to purchase at a future day, for the same or for an advanced price, does not convert the transaction into a mortgage.

3. *Concurrent intention necessary to constitute mortgage.*—To convert a conveyance, absolute in its terms, into a mortgage, the intention and understanding of both parties to that effect must concur; the fact that the party who executed the conveyance intended and considered it as a mortgage, is not sufficient to make it a mortgage.

4. *Inadequacy of price insufficient.*—Inadequacy of price or consideration, of itself, is not sufficient to convert an absolute conveyance into a security for the re-payment of money.

5. *Absolute deed, with bond conditioned to reconvey, held conditional sale, and not mort-gage.*—Where S. executed to H. an absolute conveyance for a tract of land, reciting therein a money consideration in hand paid, and took from him a receipt in full of an account held by him against W. for the same amount; and H. at the same time executed to S. a penal bond, which recited the sale, and was conditioned that he should "re-convey" the land on the payment, by a specified day, of a sum of money equal to the amount of the expressed consideration with interest: *Held,* that the transaction, as evidenced by the deed and bond, was not a mortgage, but a sale with an agreement to re-sell on the payment by the specified day of the stipulated amount; and that the contemporaneous declarations of H., as proved by the subscribing witness, that the transaction was intended as a security for his debt against W., and his subsequent declarations that the debt was still subsisting, to-gether with the facts that the land was worth nearly three times as much as the amount expressed as the consideration, and that S. retained the pos-session of it without any agreement to pay rent, were not sufficient to con-vert it into a mortgage.

APPEAL from the Chancery Court of Cherokee.
Heard before the Hon. A. J. WALKER.

This bill was filed by John C. West and wife, the appel-lants, against John. M. Hendrix and W. W. Jackson; and its material allegations were the following : That on the 26th June, 1847, complainant Sarah, who was then unmarried, and whose name at that time was Sarah Smith, was seized of a certain forty-acre tract of land, and said John C. West was at the same time indebted to said Hendrix, by open ac-count, in the sum of $53 71; that said Hendrix, pretending to be anxious to secure said debt, proposed to complainant Sarah that, if she would convey said tract of land to him, he would give West until the first day of January then next to pay said debt; that complainant Sarah assented to this pro-posal, and executed to said Hendrix a deed for said land, taking from him at the same time a bond, of which the fol-lowing is a copy :

" The State of Alabama, } Know all men by these pres-
       Cherokee County. }  ents, that I, John M. Hendrix, am held and firmly bound unto Sarah Smith, in the just and full sum of one hundred dollars, good and lawful money, for the payment of which I bind myself, my heirs and assigns forever. In witness whereof, I hereto set my hand and seal, this 26th day of June, 1847. The condition of the above obligation is such, that whereas the said John Hendrix has

this day bought of the said Sarah Smith a certain tract of land, known as the south-west fourth of the north-east quarter of section No. 6, in township No. 10, range No. 10, in the Coosa land-district, for and in consideration of the sum of $53 71, to her in hand paid : Now, if the said John M. Hendrix shall, on the payment of the sum of $55 91 on or before the first day of January next, re-convey the said tract or parcel of land to the said Sarah, by making such title as he may possess by virtue of her deed of this date, then the above obligation to be void", &c. (Signed by said Hendrix, and attested by Polly Wester.)

The bill alleges "that said deed and bond were mutually executed for the purpose of securing to said Hendrix the payment of said sum of money due to him by said West, and for no other purpose,—that being the way, according to the representations of said Hendrix, in which said security could best be given"; that complainants are ignorant of the force and effect of legal instruments, and confided in the honesty of said Hendrix, who himself drew up the writings ; that Hendrix, when the money became due, expressed a willingness to wait until complainants could procure it, if within a short time; that complainants were married on the first day of March, 1849; that in March, 1849, he instituted suit against them to recover possession of said land, and recovered a judgment for it at the Fall term of the court; that Jackson claims to have bought said land from Hendrix about the time said money became due; and that on the first day of June, 1851, complainants tendered to him the "full amount of principal and interest due on said obligation", and demanded a re-conveyance of said land, which he refused.

The prayer of the bill is, " that your Honor, upon final hearing, may decree either that said Hendrix's deed to said Jackson, if any such appears to have been made, be canceled, and the sale set aside, so far as complainants' rights are concerned, and that said Hendrix re-convey said land to complainant Sarah, on payment of said money and interest; or, if it should seem more equitable to your Honor, that said Jackson be decreed to convey. said land to said Sarah, on payment of said money and interest"; that the said judgment at law be enjoined; and for other and further relief.

Hendrix and Jackson filed a joint answer, but it is unnecessary to notice the allegations which concern the latter. The answer admits all the allegations of the bill, except as to the purpose and intent with which the deed and bond were executed, and the alleged tender to Jackson; and avers that the transaction between Hendrix and complainant Sarah was an absolute and unconditional sale and purchase of the land, in absolute payment of the debt due from West to Hendrix, and that the execution of the bond was a mere voluntary act on the part of Hendrix, to allow complainant Sarah to repurchase the land on the terms therein specified. The answer alleges, also, that said tract of land was entered by said West, in the name of said Sarah Smith, by whom he had several children, with money belonging to said Hendrix; and that, on the latter remonstrating with West about it, the land was finally sold and conveyed to him by said Sarah, in payment of the money due from West.

A demurrer to the bill, for want of equity, was overruled by the chancellor; and the cause was submitted for final decree, on bill, answer, exhibits and proof. The witnesses examined on behalf of the complainants, were Polly Wester, James Wester, Joseph Reed, D. C. Webb, and John Angle; and on the part of the defendants, John S. Wilson, A. Wester, Joseph Smith, and George Wester. The substance of their evidence may be thus stated :

*Polly Wester.*—" Mr. Hendrix and the said Sarah came to my house together, in June, 1847; and Mr. Hendrix asked me to sign a bond with him. Upon my stating that I was no scholar, and did not wish to sign any paper, Hendrix replied, 'There is no harm in it; I am taking a lien on the said Sarah's land, or certificate, to secure an account I have on John C. West; and the bond is only for the forthcoming of the certificate. If the money on my account is paid the first day of January coming, or any time through the winter, I am no ways particular.' The demand he had was in writing, and he called it an account; I do not know what it was for. Hendrix brought the said certificate and bond together, and, whilst in my presence, gave the said account to the said Sarah. I know of no proposition or conveyance other than I have stated. I did not hear of any deed from said parties.

Hendrix stated that he had taken a lien on said Sarah's land to secure the payment of his account against West, and gave her the bond and the account. I witnessed said bond. I never signed any other papers for the said parties, either on that day or any other day. I did not see the said Sarah give Hendrix any paper. Hendrix had a paper when he came to my house, which he said was a certificate of the said Sarah's land." [*Cross-examined.*] "I am a sister of John C. West. I cannot read or write. Hendrix read said bond to said Sarah. I am certain he told her that the bond was for the forthcoming of said certificate, provided the money on his account was paid by the first day of January, or during the winter; I am not mistaken about this."

*James Wester.*—" I had (?) a conversation with Hendrix at the steam-mill in Cedar Bluff; I believe it was in the spring of 1848,—it was the spring after he got the deed from Sarah Smith. Hendrix came to John West, and asked him if he had his money for him yet. West said the money was owing to him by the steam-mill folks, but he had not got it. Hendrix said he was obliged to have money, and he thought he could get money by putting the land in pawn to McElrath. West told him, if he could get the money for twelve months by letting McElrath have the land in pawn, with the right reserved for him to redeem it, that he thought he could have his money for him in that time. Hendrix said he would do it,—that he did not want (*the land ?*), that all he wanted was his money, for he was needing money. The land was worth, in June, 1847, $150 to $200. I do not know that he then told me what money it was he took the deed to secure. Hendrix told me, after this suit commenced, that he took a lien on the land from Sarah Smith to secure a debt that West owed him for money he had used of a co-partnership transaction between them. John West was in possession of the land, with Sarah Smith, at the time the deed was made. She kept house for him; after which he married her, and has been in possession of the land ever since the marriage. It was notorious in the neighborhood that they claimed the land as theirs, and always contended that Hendrix only had a lien on it. I had a conversation with Jackson, after he bought the land, and asked him if he did not know, when he

West and Wife v. Hendrix.

bought it, that he would have a fuss about the title. He said that he knew it, but it made no difference,—that Hendrix was bound to put him in possession, and if he did not it was no trade."

*Joseph Reed.*—"Heard a conversation between West and Hendrix at the steam-mill at Cedar-Bluff in Cherokee county. West was to have the money for him by a certain time, but witness does not now recollect at what time. Heard Hendrix say, at another time, that he took a deed from Sarah Smith to secure the money of his that West had used to enter the land with; but witness does not recollect the time and place of this conversation, but it was after the deed was made. The land was worth, in 1847, $100, or thereabouts. Complainants were living on the land at the time the deed was said to be made to Hendrix, and at the time Jackson bought it of Hendrix, and claimed it as their own, which was notorious in the neighborhood."

*D. C. Webb.*—"I was present at one time, and saw West have a roll of money, but did not see how much there was. He said to Hendrix, that he wanted him to sign a deed to that land, and that he had the money to pay him. When West first began to talk, Hendrix turned off and left, without saying any thing; and West then called on me to witness."

*John Angle* was examined as a witness for the defendants, but his deposition was read in evidence by the complainants. He testified, "that West told him that he had met Hendrix somewhere between his (West's) house and steam-mill; that he does not recollect all that West said, but it was about a mortgage or deed of trust on the land that Hendrix wanted to secure himself,—that Hendrix wanted to sell the land, and to give West twelve months to redeem it, and that West told Hendrix to go Sarah, or not to go to Sarah, witness does not recollect which; that he heard West say, some time afterwards, that he would not give Hendrix possession, because he had practiced a fraud on Sarah by obtaining a deed when it was represented as a mortgage; that West said he objected to Hendrix selling the land to Jackson, because he thought Jackson would not let him redeem it; that Hendrix said he would sell the land to McElrath, and that West should have one year to redeem it in, and that Sarah was to

have the land whenever he got the money that he claimed from West."

*Joseph Smith.*—" Lived on said land about one year, in 1848 or 1849, and built the house in which he lived. Applied to said John C. and Sarah West for leave to reside on said land, and they told him that he must see Hendrix in order to get leave,—that the land was the said Hendrix's, unless he (West) paid him some money by a certain time; that Hendrix had given him a certain time to raise the money, and that, if he raised it, Hendrix was to let him have the land."

*George Wester* testifies, that West, at and before the time when the land was entered, was insolvent.

*A. Wester* testifies, that West told him " he intended tendering Hendrix the sum of money for the land in controversy, but that he (Hendrix) should not have the said money"; and that he heard Hendrix say, at a time not recollected, " that he had taken a deed to the land in controversy in payment of what West owed him, and that the land was to be West's if he redeemed it at a given time."

*John S. Wilson* testifies, that he once had a deed in his possession for the land in controversy, executed by Sarah Smith to said Hendrix; that the deed was given to him by Hendrix, to be recorded, witness then being clerk of the county court of Cherokee; " that he presented said deed to. said Sarah, who acknowledged it, stating to Hendrix, who was present at the time, that she desired him not to sell said land." He also proves the handwriting of Hendrix to a receipt, appended to an account against West showing a balance of $53 71, which was in these words : " Rec'd the above, fifty-three dollars and seventy-one cents, in full, of J. C. West, *pr.* Sarah Smith." (signed) " J. M. Hendrix, June 26, 1847."

The chancellor, on final hearing, dismissed the bill, and his decree is now assigned for error.

D. W. BAINE, for the appellants, contended,—

1. That the deed and bond for title, in connection with the sole fact that the deed was founded on a pre-existing debt, upon their face constitute a mortgage.—Hinson v. Partee, 11 Humph. 587; Marshall v. Stewart, 17 Ohio, 356; Bacon

v. Brown, 19 Conn. 29; Kemp v. Earp, 7 Iredell's Eq. R. 167; Hammond v. Hopkins, 3 Yerger, 525. In all the cases decided by this court, holding that a bill of sale, with a defeasance, is not on its face a mortgage, the payment of the purchase money and interest is not stipulated; with the single exception of McKinstry v. Conly, 12 Ala. 678, where other words in the defeasance clearly showed its character.

2. That the written contract, controlled and explained by the parol proof, constitutes a mortgage. The undisputed facts of the case show all the *indicia* of a mortgage: there was an existing debt due, not from the grantor, but from a third person; Hendrix told the witnesses to the bond, at the time it was executed, that he was taking a lien on the land to secure the debt which West owed him; the possession of the land remained in the grantor, without any contract to pay rent; and the land was worth three times the amount of the purchase money stated in the deed.—Turnipseed v. Cunningham, 16 Ala. 508; Eiland v. Radford, 7 *ib.* 724; Russell v. Southard, 12 Howard, 139; Hudson v. Isbell, 5 Stew. & P. 77; May v. Eastin, 2 Porter, 426.

3. That parol proof is admissible to show that the transaction was intended as a mortgage.—Eiland v. Radford, 7 Ala. 724; Hudson v. Isbell, 5 Stew. & P. 77; McKinstry v. Conly, 12 Ala. 678; Robinson v. Farrelly, 16 *ib.* 476; Russell v. Southard, 12 Howard, 139.

4. That the delivery and receipt of West's account, at the time the bond and deed were executed, did not extinguish the debt; and that the declarations of Hendrix, at the time of the transaction and subsequent to the law-day mentioned in the bond, showed that he considered the debt against West as still subsisting.—Turnipseed v. Cunningham, 16 Ala. 508; Locke's Executor v. Palmer, 26 Ala. 322; Russell v. Southard, 12 Howard, 139; Brown v. Dewey, 1 Sandford's Ch. R. 57; Bacon v. Brown, 19 Conn. 34.

5. That, if the evidence even left it doubtful whether a mortgage or a conditional sale were intended, it would be held a mortgage.—Locke's Executor v. Palmer, 26 Ala. 322, and cases there cited.

Jas. B. Martin and M. J. Turnley, *contra*, insisted,—

1. That, admitting that the transaction, on the face of the

deed and bond, might be construed either a mortgage or a conditional sale, its true character was to be determined by the intention of the parties, as ascertained from the attendant circumstances.—Poindexter v. McCannon, 1 Dev. Eq. R. 372; Freeman v. Baldwin, 13 Ala. 246; McKinstry v. Conly, 12 *ib.* 678.

2. That there can be no mortgage, where there is no mortgage debt to be secured.—Conway's Executors v. Alexander, 7 Cranch, 218; 2 Edwards' Ch. R. 143; McKinstry v. Conly, *supra.*

3. That the evidence shows that the debt against West was extinguished, and that no new debt was created.—Powell on Mortgages, vol. 1, p. 335.

RICE, J.—A mortgage is essentially a security for a debt. When no debt exists, a mortgage is impossible.—Conway v. Alexander, 7 Cranch, 218; Chapman v. Hughes, 14 Ala. Rep. 218.

When a conveyance is made in satisfaction of a precedent debt, it cannot take effect as a mortgage, although containing a redemption clause; for, the previous debt being extinguished, and no new one created, one of the essential attributes of a mortgage is wanting.—Poindexter v. McCannon, 1 Devereux's Eq. Rep. 373; Holmes v. Grant, 8 Paige, 243; Robinson v. Cropsey, 6 Paige, 480; same case, 2 Edw. Ch. Rep. 138; McKinstry v. Conly, 12 Ala. Rep. 678; Freeman v. Baldwin, 13 Ala. R. 246; Goodman v. Grierson, 2 Ball & Beatty's Ch. Rep. 274.

When a deed is made for a consideration *paid at the time*, whether the payment is made in cash, or by the surrender and satisfaction of a precedent debt,—it will not lose the character of a conveyance, by an agreement on the part of the vendee, to allow the vendor to re-purchase at a future day, for the same price, or for an advanced price.—Glover v. Payne, 19 Wend. R. 518; Brown v. Dewey, 2 Barb. Sup. Ct. Rep. 28; Williams v. Owen, 5 My. & Cr. 303; Flagg v. Mann, 14 Pick. Rep. 467.

The fact that the party executing a conveyance, absolute in its terms, intended and considered it as a mortgage, is not. sufficient to make it a mortgage. To produce that effect,

such must have been the clear and certain intention and understanding of the other party likewise.—Holmes v. Fresh, 9 Missouri Rep. 200; Chapman v. Hughes, 14 Ala. R. 218; Hickman v. Cantrell, 9 Yerger, 172; 4 Kent's Com. 142; McDonald v. McLeod, 1 Iredell's Eq. Rep. 221.

Inadequacy of price or consideration, alone, will not convert an absolute conveyance into a security for the repayment of money.—Conway v. Alexander, *supra;* Holmes v. Fresh, *supra;* Lane v. Dickerson, 10 Yerger, 373; Moss v. Green, 10 Leigh, 251, and cases therein cited by Parker, J.

The transaction which the complainants allege to be a mortgage, occurred on the 26th June, 1847, between the defendant, Hendrix, and the complainant Sarah, who was then unmarried and known by the name of Sarah Smith. The debt, which it is alleged was intended to be secured by the transaction, was a debt for $53 71, due to Hendrix by John C. West, by account. Hendrix receipted the account as follows, " Rec'd the above fifty-three dollars and seventy-one cents, in full, of J. C. West, *pr.* Sarah Smith. J. M. Hendrix, 26 June, 1847."

The account, thus receipted, was surrendered to Sarah Smith; and she executed the absolute deed to Hendrix, and received from him an instrument, a copy of which is shown in ' Exhibit A' to the bill. There was no debt between Sarah Smith and Hendrix, and no loan.

After this transaction, we cannot see from the evidence, how Hendrix could have compelled payment, either from Sarah Smith or John C. West. The evidence is insufficient to authorize us to say that the debt of John C. West to Hendrix was not satisfied by this transaction, or that any new debt was created. The rule is, that when there is a deed absolute in its terms, and the right of redemption is denied by the answer, a court of equity will not treat it as a mortgage, unless the proofs are clear, consistent, and convincing, that it was not an absolute purchase, and that the object of the transaction in its original construction, as understood by both parties, was to create a security for money.—Chapman v. Hughes, *supra;* Freeman v. Baldwin, *supra;* Bryan v. Cowart, 21 Ala. Rep. 92; Brantley v. West, 27 Ala. Rep. 552; Franklin v. Roberts, 2 Iredell's Eq. Rep. 560; Lane v. Dickerson, 10 Yerger, 373; Moss v. Green, *supra.*

Our opinion is, that the transaction was not a mortgage, but a sale accompanied by an agreement to re-sell on the payment of $55 91, on or before the 1st day of January next after the sale.—Hickman v. Cantrell, 9 Yerger, 172; Lane v. Dickerson, 10 Yerger, 373.

The decree of the chancellor is affirmed, at the cost of the appellants.