# Peeples *v.* Stolla.

# Stolla *v.* Peeples.

### *Bill in Equity to cancel Deeds, &c.*

1.  *Statutory separate estate, of wife; mortgage or conveyance of, who may make.*—The statutes creating the statutory separate estate of the wife, and defining the powers and rights of the husband and wife over it, force the construction that the husband and wife cannot mortgage it; but they may convey it by deed.

2.  L., while a *femme sole,* mortgaged her land for a loan of money.  She afterwards intermarried with P.  This mortgage was not recorded, and afterwards the mortgagee, S., paid over five hundred dollars more, (the two payments equalling the value of the property), destroyed the mortgage, and took an absolute conveyance to the land from husband and wife.  In the deed is inserted the following:  "S. hereby agrees to and with the parties of the first part [the husband and wife] that the first party shall have the right to purchase back the within described property for $1,100, within twelve months from the date hereof," &c.

*Held:*  1.  One of the tests to determine whether the instrument is a mortgage, or a sale with the privilege of repurchasing, is the existence or non-existence of a debt to uphold it; if there be no debt, there can be no mortgage.

2.  The instrument above is not, under the evidence, a mortgage, but a conditional sale, or rather a sale with the privilege of repurchasing; there is nothing to show the retention of any evidence of debt, or intention to look to the vendors for any part of the money forming the consideration of the deed.

3.  The reservation in a deed made by husband and wife of her statutory estate of a right to repurchase, will not invalidate it or convert it into a mortgage, if made in good faith, and not as a covert mortgage, or a security or cover for usurious interest.  If, however, the real transaction is a loan of money, the contract cannot withstand the test of judicial scrutiny, and will be treated as a mortgage.

APPEAL from Chancery Court of Mobile.

Heard before Hon. HURIOSCO AUSTILL.

This was a bill filed by Mrs. Catherine Peeples, by next friend, against Henry J. Peeples, her husband, and Louis C.

Stolla, and sought to have declared null and void certain deeds, which she and her husband had executed to Stolla, of a certain house and lot in Mobile, and to enjoin proceedings commenced by Stolla to obtain possession. The bill alleged that complainant was a married woman, the wife of Henry J. Peeples; that prior to her marriage to him, which took place in the month of January, 1872, she was the widow of W. H. Lake; that during her widowhood she owned the premises in controversy, and resided on them as her homestead; that while a widow, she borrowed of Stolla the sum of five hundred dollars; that in the month of June, 1872, her husband prevailed upon her to borrow of Stolla another five hundred dollars—the said Henry J. Peeples having first gone to Stolla, and in fact secured the loan—and that the said five hundred dollars was paid to the said H. J. Peeples.

The bill further alleged that the last sum borrowed was added to the five hundred dollars loaned her while a widow, and one hundred dollars additional was added thereto; that the defendant, Stolla, pretending to her that he wanted a mortgage to secure the loans of money made as above stated, induced her, on the 4th day of June, 1872, to execute and sign with her husband, a paper, writing, or deed, pretending at the time that it was a mortgage to secure the loans, when in truth and in fact, it was an absolute deed to the premises; that both Stolla and her husband told her that it was not an absolute deed, but a mortgage. The bill further alleges that subsequent to the execution of this deed, and about a year afterwards, her husband again prevailed on her to borrow money of Stolla, and that in April, 1873, Stolla advanced two hundred and fifty dollars more, which was also paid to her husband; that this last loan was added to the previous loans, and another paper, writing, or deed, was prepared by said Stolla and his attorney, which complainant understood, as before, to be merely designed to secure said Stolla, she understanding, both from Stolla and her husband, that she was to have two years in which to pay off the debts, during which time she was not to be disturbed in her possession of the property. The bill further alleged that at the time of executing this last deed, Stolla fraudulently induced complainant to sign another paper, the purpose and object of which she did not understand, but which she had since learned, by advice of counsel, was to constitute her a tenant. The bill alleged that Stolla fraudulently combined with her husband to induce her to execute each of the deeds and the lease described above; that complainant could not read or

write—was ignorant of the effect of the writings at the time she executed them—and that she so executed them upon the representations of both Stolla and her husband that they were mortgages, and not deeds, and that she would have two years in which to pay off the debt. These deeds are made exhibits to the bill, and the first of them, which is a warranty deed in the usual form, contains the following clause: "And the party of the second part, L. C. Stolla, hereby agrees to and with the said parties of the first part, that they shall have the right to purchase back the within described property, for the sum of $1,100, within twelve months from the date hereof." Henry J. Peeples, the husband, did not answer, and a decree *pro confesso* was taken against him. Sworn answers were required, and Stolla so answered. In his answer, he flatly denied every charge of fraud or imposition, alleged that all the transactions were the result of the complainant's solicitations, and averred that the money was each time paid to complainant, and not to her husband. He further averred that when the first loan was made to complainant, who was then a widow, she executed to him a mortgage on the premises in controversy, and that when he received the first deed he returned this mortgage to complainant. He averred that each of the deeds and the lease were read over, and their effect explained to complainant at the time of their execution. Loomis, a justice of the peace before whom each of the deeds is acknowledged, testified that he explained them fully to Mrs. Peeples at the time they were acknowledged; he also testifies to the signing and delivery of the lease. Several witnesses were examined as to value, and a majority of them testified that the place was not worth exceeding twelve hundred dollars.

The only evidence taken to sustain the allegations of the bill was that of the complainant, who testified substantially as averred in the bill. Stolla was also examined as a witness, and testified that she gave him a mortgage to secure the money loaned her while a widow. That the loan of the second five hundred dollars was made after her marriage and at her solicitation and request. "She then agreed to give and did give me a deed, signed by herself and husband, to the house she had previously mortgaged to me." This deed bears date June 4, 1872, and contains a stipulation for repurchase for the sum of eleven hundred dollars, at any time within twelve months; that soon after this deed was given he was informed that one McCormick, a justice of the peace,

had declared "that the deed was of no account, because of the clause in it allowing Mrs. Peeples to buy back the property;" that the deed was read over and fully explained to her both by himself and Loomis, who took the acknowledgment, and also explained the deed to her; that he never did or said anything to induce the complainant to believe the instrument was a mortgage and not a deed.

As to the deed of April, 1873, Stolla testified that about that time complainant again applied to him to borrow money, which she said she needed to buy family provisions with; that he then told her he had heard that the deed which she had given in June, 1872, was invalid, and that if she and her husband would make him a good and legal deed to the lot in consideration of all the money he had previously lent her, as well as what he would then let her have, he would lend her some more money; that she and her husband both agreed to this, and it was then understood that he was to have an absolute deed to the premises; that under this agreement he met complainant and her husband at the office of G. Y. Overall, an attorney, and there paid her, in addition to what he had already loaned, one hundred and fifty dollars, and that she and her husband then executed the deed of the 6th of April, 1873; that the deed was read over and explained to complainant and her husband by Mr. Overall. He further testified, at the time of the execution of this deed, complainant proposed to rent the place from him, and a lease was thereupon made to her.

The chancellor, on the hearing, decided both of the deeds null and void, but decreed a lien in favor of Stolla on the place for the five hundred dollars lent complainant while a widow, and for which she had executed a mortgage, and restrained Stolla from proceeding at law to dispossess complainant. There was a cross appeal and cross assignment of error, by consent of parties under the rules, and both assign the decree as error.

RAPHAEL SEMMES, for appellant, Peeples.

BOYLES & OVERALL, contra.

STONE, J.—There is no contest raised over the first loan of money, five hundred dollars, by Stolla to Mrs. Peeples, then Mrs. Lake. This loan is admitted in the bill; and it is also admitted that Mrs. Peeples was then a *femme sole*. The bill describes this as a simple contract debt, while the

answer sets up that Mrs. Peeples [Lake] cotemporaneously
executed to Stolla a mortgage on the premises in controversy
to secure its payment.   The testimony proves the averments
of the answer, in this respect, to be true.   It is thus shown
that when Mrs. Lake intermarried with Peeples, she owed
Stolla five hundred dollars, to secure the payment of which
he held her mortgage duly acknowledged, but not recorded.

When the second transaction took place, Mrs. Peeples was
a married woman.   At that time Stolla parted with another
five hundred dollars.   He testifies that he paid it to Mrs.
Peeples; she, that he lent it to her and her husband, Peeples.
We are inclined to the conviction that the money was paid
to her, but it is not important who received the money.   We
are satisfied she conducted the negotiation, and that the
money was obtained on the strength of her property.   The
theory and gravamen of the bill are, that the conveyance of
June 4, 1872, " Exhibit A," to the bill, is a mortgage made
by a married woman to secure the repayment of borrowed
money.   If this be true, under our decisions such mortgage
does not bind the statutory separate estate of a married
woman.—*Conner v. Williams*, 55 Ala.; *Coleman v. Smith*,
55 Ala.; *Northington v. Faber*, 52 Ala. 47; *Bibb v. Pope*,
43 Ala. 90; *Wilkinson v. Cheatham*, 45 Ala. 337.   We
hold that the power of the husband and wife to sell the
property of the wife, or any part thereof, and to convey the
same by their joint instrument of writing, under section
2373 of the Revised Code, does not confer the right on them
to make a mortgage.—*Bloomer v. Waldron*, 3 Hill, N. Y.
361, 366; 2 Washb. Real Property, 318, § 5; *Albany Fire
Insurance Co. v. Bay*, 4 Const. 9, 19.   We reach this con-
clusion by considering the class of contracts for which the
wife's separate estate may be charged, under section 2375;
her qualified power of disposition under sections 2373 and
2378; the directions as to the proceeds of such sales, found
in section 2374; the power over, and rights in such property
reserved to the husband under sections 2372, 2375, and 2379;
and the mode provided in sections 2384 and 2385, of restor-
ing the wife to the control of her estate, the rents, issues and
profits thereof, as if she were a *femme sole*, and conferring on
her the right to sue and be sued in her own name.   These
sections, together with the entire system, show a fixed pur-
pose to make this a peculiar estate, and to circumscribe the
powers of both the husband and wife, within express pro-
visions.   This power in the wife is very unlike that which
a married woman may exercise over her equitable separate

estate.—See 2 Kent Com. 167; *Sampson v. Williamson*, 6 Tex. 115; 2 Brick. Dig. 86, §§ 211, 213; *Ozley v. Ikelheimer*, 26 Ala. 332; *Cowles v. Morgan*, 34 Ala. 335.

The conveyance of June 4, 1872, from Peeples and wife to Stolla, is, in form, an absolute deed of bargain and sale, with full covenants of warranty, with a clause inserted in it as follows: " L. C. Stolla hereby agrees to and with the parties of the first part, Catherine Peeples and H. J. Peeples, that said parties of the first part shall have the right to purchase back the within described property for eleven hundred ($1,100) dollars, within twelve months from the date hereof; together with the tenements, hereditaments, rights, members, privileges, and appurtenances unto the above mentioned and described premises belonging, or in any wise appertaining." Is this a mortgage, or a sale with the reserved privilege of repurchasing? If the former, then, in equity, the ownership of the property remained with Mrs. Peeples, and Stolla had only a right to enforce the collection of his claim out of it. The effect of a mortgage, made by one capable in law of executing such contract, is to leave on the mortgagor a personal liability for the residuum of the debt, if, on foreclosure, the property mortgaged fails to yield a sum sufficient to pay it in full. Hence, one of the tests by which to determine whether or not a mortgage was intended, is the existence or not of a debt to uphold it. If there is no debt, there can be no mortgage. On the other hand, security for a debt is incompatible with the idea of a conditional sale; and when shown to exist, is conclusive that the transaction is a mortgage.

The extrinsic proof in this record varies widely. Mrs. Peeples testifies that her husband informed her it was a mortgage, and her understanding was that she was executing a mortgage. She leaves it in doubt whether Stolla heard the representation so made by Peeples. Stolla is directly at issue with her; says he refused to take a mortgage; that he purchased the property, and stipulated in the deed that the parties should have the privilege of repurchasing. Loomis, the justice, fully corroborates Stolla, and says he fully explained the conveyance to Peeples and wife before they executed it. Stolla testifies that when he loaned the five hundred dollars to Mrs. Lake, he took her mortgage on the lot in dispute to secure its payment. When the second conveyance was executed, the mortgage was given up, and, not having been recorded, was destroyed. There is no evidence in the record that any note was ever given to evidence a

debt; and the record is silent whether any debt was claimed, on or after the day the second conveyance was executed.

In the case of *McKinstry v. Conly*, 12 Ala. 678, Mallett had made to Conly an absolute bill of sale to slaves, with the following cotemporaneous writing, executed by Conly to Mallett:

"I, Morris J. Conly, do hereby promise to Giles M. Mallett that, upon payment being made to me of the sum of $1,876, with lawful interest from date, I will re-sell to him, if they are in my possession, three of the negro slaves, namely, John, Elsey a black, and Elsey a mulatto girl, more fully described in book, &c., in the clerk's office of Mobile county.

(Signed) "M. J. CONLY."

It was held that this was a sale, with condition to re-purchase. The court said:

"It appears there had been a previous mortgage on these slaves, executed by Mallett to the defendant, which was abandoned by the parties, and the contract executed, which it is now insisted was intended to operate as a mortgage. The question here naturally presents itself, why was this change made? If a mortgage was intended, why abandon the one already executed and substitute another in its stead, importing on its face an entirely different contract, and which could only be established to mean something else by extrinsic parol proof, of which no one had any knowledge but the parties themselves?"

In *West v. Hendrix*, 28 Ala. 226, 234, we said: "When a deed is made for a consideration *paid at the time*, whether the payment is made in cash, or by the surrender and satisfaction of a precedent debt, it will not lose the character of a conveyance, by an agreement on the part of the vendee to allow the vendor to repurchase at a future day for the same price as for an advanced price." It was further said, in that case, that "the fact that the party executing a conveyance, absolute in its terms, intended and considered it as a mortgage, is not sufficient to make it a mortgage. To produce that effect, such must have been the clear and certain intention and understanding of the other party likewise." Again: "Inadequacy of price or consideration, alone, will not convert an absolute conveyance into a security for the repayment of money." See, also, *Murphy v. Barefield*, 27 Ala. 634; *Bishop v. Bishop*, 13 Ala. 475; *Brantley v. West*, 27 Ala. 542.

Upon a fair survey of all the evidence in this cause, we

do not think the property in controversy was worth more than eleven or twelve hundred dollars. Hence no question can be raised here as to insufficient consideration.

Our conclusion is, that the conveyance of June 4, 1872, is what is usually called a conditional sale. A sale, with condition to repurchase, is probably a more accurate designation.

While we have held, as shown above, that a married woman can not pledge her statutory separate estate by mortgage, both the letter and spirit of the statute require us to hold that she and her husband may convey by deed.—See Revised Code, § 2373.

Can she make a sale, reserving the right to repurchase? Such reserved right is usually incorporated in the contract at the instance, and for the benefit of the seller. We are not able to perceive that it can operate to her prejudice. The sale stands as a sale, if there be no fraud; and in making it, she does no more than the statute authorizes her to do. So, she and her husband may make an executory purchase on her account, may use her statutory separate estate, moneys and otherwise, in making the purchase, and may pledge the property purchased, by way of mortgage, to secure unpaid purchase money.—*Marks v. Cowles,* 53 Ala.; *Pylant v. Reeves,* 53 Ala. 132; *Sterrett v. Coleman,* at the present term.

We are unable to draw or approve a distinction which will uphold as valid and binding a contract by which a married woman purchases property which she never owned, and, at the same time, declare invalid her contract of sale of her own property, because she reserves in such sale the mere privilege to repurchase; a privilege of which she may or may not avail herself at her option.

In what we have said above, we do not intend to affirm that every contract of such married woman, having the power of a conditional sale, will be upheld. Such contract, to withstand judicial scrutiny, must be a real sale—not a covert mortgage, a security, or cover for usurious interest. Where the real transaction is a loan of money to be repaid, it is a mortgage.

Ascertaining the rights of these parties to be as shown above, it is manifest that the present bill can not be maintained. It proceeds on the idea that the conveyance is a mortgage, and that it is void by reason of the coverture of Mrs. Peeples. Her only remedy is to have specific execution of her conditional contract of purchase, on proper allegations and proof. They are not found in the present record.

We deem it unnecessary to notice at length the convey-

ance of April 6, 1873. As the property was then the homestead of Mrs. Peeples, if she owned any interest in it at that time, the conveyance was not so acknowledged and certified as to devest her interest, under the homestead law of April 23, 1873.—See *Marks v. Miller*, 55 Ala.

Mrs. Peeples can take nothing by her appeal, but her next friend and sureties must pay the cost thereof.

On the cross appeal of Stolla, the decree of the chancellor is reversed, and a decree here rendered dismissing the bill, at the costs of complainant's next friend in the court below and in this court.