# Mitchell *v.* Wellman.

*Bill to declare Unconditional Sale a Mortgage, and to Redeem.*

1. *Whether conveyance absolute on its face is a mortgage; what necessary to be shown.*—When the contestation is whether a conveyance, absolute on its face, was in fact intended as a mortgage, the party so asserting must show, by clear and convincing evidence, that such was the intention and understanding of both parties; but, where the contestation is whether the transaction was intended as a mortgage or as a conditional sale, with a reservation of the right to repurchase, the same stringency of proof is not required; and if the intention is in doubt, the court inclines to hold it a mortgage.

2. *Absolute conveyance, with stipulation to repurchase.*—In this case, the conveyance being absolute in form, with a stipulation in a separate

[Mitchell v. Wellman.]

paper of the right to repurchase by a specified day; and the evidence showing that the transaction did not originate in a proposition for a loan, and that no debt existed or continued between the parties; the court declines to treat the transaction as a mortgage.

APPEAL from the Chancery Court of Jefferson. ·

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 15th August, 1884, by Albert Mitchell and Spencer Buckner, and averred that, some time in the year 1882, complainants purchased a lot in the city of Birmingham from the Elyton Land Company, on the installment plan, part of the purchase-money being paid at the time of purchase and the balance to be paid on time; that complainants borrowed the money with which to make the cash payment from Mrs. Fannie Linn, and had the Elyton Land Company's bond for title, made to her to secure the loan; that afterwards Mrs. Linn lent complainants the money with which to pay the balance of the purchase-money, and took the deed to said lot in her own name, to secure the loan made to complainants; that in January, 1883, one Bernhard Wellman, who was engaged in lending money, agreed to lend complainants eight hundred dollars on said lot, and did lend them, at that time, five hundred and forty-five dollars, the balance due Mrs. Linn, which was paid to her, who thereupon executed a deed to the lot to complainants; that said Wellman let complainants have about seventy-five or one hundred dollars afterwards, and released to complainants a store account, altogether amounting to about eight hundred dollars; that Wellman agreed to lend the money for one year, for which he was to receive four hundred dollars as interest. The bill further recites, that for the consideration stated, complainants made a deed of sale to Wellman, who executed to them an agreement to re-convey the lot upon the payment of twelve hundred dollars at the maturity of the loan; that complainants were in possession of the lot at the time of this transaction with Wellman, and continued to live on the lot until some time in April, 1884, when they moved off in consequence of threats made by Wellman to turn them out of doors if they did not pay rent. Complainants offered in their bill to re-pay Wellman the amount borrowed from him, with lawful interest, and prayed to be relieved from usurious interest, claiming that the deed made to Wellman was intended and understood to be a mortgage; prayed for an account, and that complainants be let in to redeem.

The defendant, Wellman, answered, denying that he had made a loan to complainants as claimed by them, but claiming that he bought the lots in controversy for eight hundred dollars, rented it to complainants at a nominal rent, and agreed to allow them to re-purchase at any time within twelve months,

for twelve hundred dollars; that complainants were indebted to him in a small amount for merchandise sold them; which was embraced in the amount to be paid, and for which defendant gave them a receipt in full, upon the execution of the deed to the lot; that complainant, Spencer Buckner, had sought to borrow money from defendant, but that defendant had refused to lend him money, but when informed by said Buckner that he and complainant, Albert Mitchell, owned the lot, offered to buy it, and give them the option to re-purchase in twelve months, upon paying him twelve hundred dollars; that the transaction was a *bona fide* purchase.

The averments of the bill and the denials of the answer presented the issue, whether the deed made by complainants was intended only as a mortgage. Voluminous testimony was offered by the complainants tending to show that the deed, though absolute in terms, was intended and understood by the parties, only as a security for the loan made by the defendant to the complainants. The defendant sought to show by his own testimony and that of other witnesses that he had purchased the lot subject only to the right of complainants to re-purchase, upon paying him twelve hundred dollars within twelve months from date of purchase. The testimony is in irreconcilable conflict, but a sufficient analysis of it appears in the opinion to show the aspect in which it was presented to the Chancery Court. On final hearing, the cause being submitted on the pleadings and proof, the chancellor dismissed the bill; which action of the court is here assigned as error.

MOUNTJOY & TOMLINSON, for appellants.—1. The chancellor erred in holding that in cases of this kind the proof must be "clear and convincing, even strong and stringent" that the parties intended a mortgage. That rule applies only where it is sought to declare an absolute sale a mortgage, but has no application where the sale is conditional only.—*Turnipseed v. Cunningham*, 16 Ala. 501; *McNeil v. Norsworthy*, 36 Ala. 156; *Turner v. Wilkinson*, 72 Ala. 365. A preponderance of the testimony shows that the parties intended a mortgage and not a sale.

2. The evidence shows that complainants had made with the defendant a contract to borrow money before going to the office of his attorney, where he claims, another bargain was made, as shown by the deed. There having been a valid agreement to lend the money to complainants, no matter in what form the papers were prepared, if the intention was to secure the loan, they constitute a mortgage.—65 Ala. 390; 35 Ala. 586; 39 Ala. 156; 16 Ala. 477; 1 Jones on Mortgages, §§ 206, 250-1, 273; 3 Pomeroy's Eq. Jurisprudence, 170;

[Mitchell v. Wellman.]

Bishop's Equity Principles, § 154; 17 Amer. Dec. §§ 301–2, *notes.*

3. In this case are all the *indicia* of a mortgage. The transaction had its origin in a negotiation for a loan of money; the vendors remained in possession; the so-called purchase-money was used partly in paying off an encumbrance, and partly in improving the property; the party advancing the money knew it was to be so used; there was the existence of an indebtedness and the amount advanced was less than two-thirds the value of the lot.—39 Ala. 159; 27 Am. Decisions, 347; 47 Am. Rep. 553; 16 Ala. 477; 26 Ala. 322; Jones on Mortgages, §§ 273, 600.

McADORY & GILLESPY, *contra,* cited 29 Ala. 254; 72 Ala. 361; 58 Ala. 37; 37 Ala. 53; 28 Ala. 226; 42 Ala. 32; *Ib.* 477; 27 Ala. 542.

CLOPTON, J—On January 2, 1883, the complainants and their wives executed to defendant an absolute conveyance of the land in controversy, in consideration of eight hundred dollars; and the defendant cotemporaneously executed a separate instrument, granting complainants the right to re-purchase at any time before January 1, 1884, by the payment of twelve hundred dollars, containing a covenant to convey on payment being made. The complainants, having failed to make payment within the time specified, bring the bill to have the two instruments declared a mortgage, and to redeem.

When the contestation is, whether the parties, though making an absolute conveyance, contemplated an *unconditional* sale or a mortgage, the party asserting that a mortgage was intended, must show such intention and understanding of both parties by clear and convincing evidence. But, when it is admitted or shown that the transaction is not an unconditional sale, there being the right to re-purchase, or an agreement to reconvey on specified conditions, expressed either in the deed, or by separate instrument; and the controversy is, whether a *conditional* sale or a mortgage is intended, the same stringency of proof is not required; and if the intention is in doubt, equity leans in favor of considering it a mortgage, as most generally accomplishing complete justice to both parties—*McNeill v. Norsworthy,* 39 Ala., 136; *Turner v. Wilkinson,* 72 Ala., 361. The rule laid down by the chancellor—that the evidence must be clear and convincing, even strong and stringent—is too exacting and rigorous, in a case where the question is whether a conditional sale or a mortgage was intended.

The deed, by itself, is absolute in form. The separate instrument recites the purchase of the land from the grantor,

[Mitchell v. Wellman.]

agrees to allow a repurchase, and to convey on payment of the amount, within the time stipulated. The conveyance and the separate instrument, having been cotemporaneously executed, and being parts of the same transaction, must be construed as one. Thus construed, they import a sale with condition to repurchase. *Eiland v. Radford*, 7 Ala., 724; *McKinstry v. Conly*, 12 Ala., 678. Persons capable of contracting may make a contract for the sale and purchase of land, with a reservation to the vendor of a right to repurchase at a fixed price, and within a specified time. *Conway v. Alexander*, 7 Cr., 218. The covenant to reconvey may be a circumstance, considered in connection with other circumstances, going to show, but not in itself sufficient to show, that the parties intended a mortgage. Something more than a reservation of a right to repurchase and an agreement to reconvey must be shown.

Each transaction must depend, in a great measure, on its particular circumstances. The ascertainment of the intention of the parties readily suggests itself as the proper mode to determine whether the contract is a mortgage or a conditional sale. As the intention may be made to appear, the court will carry it into effect. That the grantor intended and considered the conveyance as a mortgage, is not sufficient; such must be likewise the intention and understanding of the grantee. *West v. Hendrix*, 28 Ala., 226; *Peeples v. Stolla*, 57 Ala., 53. The intention may be collected from the extrinsic circumstances, and the internal evidence afforded by the papers. Without underrating what may be considered minor tests, the criterion most generally regarded as of controlling significance, is a continued debt, which the grantor is liable to pay, whether it be an uncancelled antecedent debt, or one presently contracted. If there be a subsisting liability, the payment or discharge of which is in fact the payment stipulated in the reservation of the right to repurchase, the transaction is in reality a mortgage, whatever form the papers may assume. But, if there is no existing liability or indebtedness under any circumstances, there is nothing on which to found a mortgage. *West v. Hendrix, supra*. The investigation, therefore, is resolved into an inquiry, whether the relation of debtor and creditor existed before, or at the time of the transaction, which is continued; or, if not, whether the transaction commenced in a negotiation for a loan of money, or for other purpose, whereby a liability is created, which the vendor is bound to discharge in the future? All other circumstances and considerations are ancillary to this primary inquiry.

The connection between the parties, except as to a small antecedent debt, commenced with this transaction. There is a conflict between the evidence of complainants and of the de-

[Mitchell v. Wellman.]

fendant, in respect to the manner in which the transaction began ; whether in a negotiation for a loan, or for a purchase. The force of the testimony of complainants and their wives is greatly impaired by the contradictions as to material matters by other witnesses. In view of this conflict, the correct version of the transaction may be satisfactorily ascertained by the consideration of the evidence of the disinterested witnesses, as it may corroborate, or contradict, and illustrate. The complainants had previously purchased the lot from the Elyton Land Company, and borrowed money to pay for it from Mrs. Linn, who had a lien thereon as security for the money thus advanced. She was pressing for payment. It is a circumstance of some significance that, at the time of the transaction between the parties, the lot was in the hands of a real estate agent for *sale*, in whose hands it had been previously placed by complainants ; and who had failed to sell it at nine hundred dollars, the price fixed by them. In this state of affairs, the negotiations between the parties commenced.

As appears from the evidence of the subscribing witnesses, who were also the attorneys who drafted the papers, the complainants and the defendant came to their office, stated to them the terms of the trade as agreed on, and directed them to draw the necessary papers. A few hours afterwards, the defendant and the complainants, with their wives, returned to the office. The papers were read to them, and their character and effect, and the rights of the parties under them, fully explained. No claim was made that a mortgage was intended. The complainants expressed themselves satisfied with the papers as explained ; said they contained the terms of the trade as agreed on, and thereupon they were respectively executed by the parties. The complainants spoke of the transaction afterwards as a sale, to other witnesses. One of them was indebted to defendant about ninety-six dollars, for goods previously purchased, which it was agreed should be taken in payment for the lot, *pro tanto*. The notes evidencing the debt were surrendered. A part of the purchase-money was left in the hands of defendant, a portion of which was taken up in goods ; and when the balance was paid to one of the complainants, in March, subsequently, he executed a receipt "as balance in full of payment of eight hundred dollars for house and lot." By the agreement, the complainants were to have the use and possession, at a nominal rental, until January 1, 1884, at which time their right to repurchase expired, as a part of the consideration paid, and defendant gave them a written lease for this purpose. This rebuts any inference that might otherwise be drawn from an unexplained, continuing possession, and tends to show that complainants recognized the transaction as a sale, and consented to

[Cox v. Johnson et al.]

hold under the defendant as his tenants. After January 1, 1884, they promised to pay rent, and made a small partial payment; and on a subsequent demand to pay rent or vacate the lot, they vacated it without objection or claim. We do not think that the evidence shows any marked disparity between the value of the property and the price paid.

It would be too tedious, and an unnecessary and unprofitable extension of this opinion, to consider the evidence, which is somewhat voluminous, in all its details. We have attended generally to the salient facts, which we ascertain to be established. On a full and careful examination, we conclude that the transaction did not commence in a proposition to borrow money, that the writings express the full terms of the agreement, and that the transaction is a sale with condition to repurchase. There was no subsisting or continuing debt, which the vendors were bound to pay at any future time.—*Peeples v. Stolla, supra ; Eiland v. Radford, supra.*

Affirmed.