## PEARSON *vs.* SEAY.

[BILL IN EQUITY FOR RESCISSION OF CONTRACT.]

1. *Difference between mortgage and conditional sale.*—A conveyance, in the usual form of a deed of bargain and sale, which recited as its consideration the present payment of $600 by the grantee (P.) to the grantor (M.), and contained the usual covenants of warranty, with a stipulation added in these words : "Now it is agreed between the parties, and is hereby made a part of the above obligation, that if the said M. pay, or cause to be paid unto the said P., on or before the 1st day of January next, the sum of $600, which amount the said P. this day paid to him in consideration of the above purchase, then this obligation to be void, else to remain in full force and effect,"—*held* a mortgage, and not a conditional sale, on proof that it was executed for the purpose of indemnifying the grantee against liability on certain notes executed by him for the accommodation of the grantor, to be discounted by a third person for the benefit of the grantor, and amounting in the aggregate to the sum specified as the consideration of the deed.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. N. W. COCKE.

THE bill in this case was filed, on the 7th October, 1857, by Benjamin F. Pearson, against John W. Seay, Francis M. Mosely, and Mary Ann Mosely, his wife ; and on the death of said Seay pending the suit, the same was revived against his personal representatives. The object of the bill was, to obtain the rescission of a contract, by which the complainant, as he alleged, purchased a tract of land from said F. M. Mosely, and executed to him several notes, amounting in the aggregate to six hundred dollars ; and he also asked the cancellation of the notes, an injunction of an action at law which had been brought against him on them, and general relief. The ground on which a rescission of the contract was sought, as alleged in the bill, was, that Mosely, at the time the contract was made, falsely and fraudulently represented that he had a perfect title to the lands, and that his wife would readily relinquish her

dower; whereas, in fact, he had no title whatever, and the land belonged to his wife's children by a former husband. The deed from Mosely to the complainant, which was made an exhibit to the bill, recited as its consideration the present payment of six hundred dollars by Pearson to Mosely, was in the usual form of a deed of bargain and sale, and contained the usual covenants of warranty; and a stipulation was added at the bottom, in the following words: "Now it is agreed between the parties, and is hereby made a part of the above obligation, that if the said Mosely pay, or cause to be paid, unto the said Pearson, on or before the first day of January, 1857, the sum of six hundred dollars, which amount the said Pearson this day paid him in consideration of the above purchase, then this obligation to be void; else, to remain in full force and effect." The chancellor (Hon. WADE KEYES) dismissed the bill, on motion, for want of equity; but his decree was reversed by this court, at its January term, 1860, and the cause was remanded; the court holding, that the transaction between the complainant and Mosely, as shown by the allegation of the bill and the exhibit, was a conditional sale, and not a mortgage.—See the case reported in 35 Ala. 612–17, where the allegations are copied *verbatim*.

An answer was filed by Mosely and wife, admitting all the allegations of the bill, except as to any fraud on the part of Mosely in making the contract with Pearson; and alleging that, at the time the contract was entered into, he honestly believed that he and his wife had a perfect title to the land. The executors of the last will and testament of Seay filed an answer, alleging that the deed from Mosely to Pearson was in fact a mortgage, and was so intended by the parties at the time it was made; that no money was paid by Pearson, but several promissory notes were executed by him, payable to Mosely, and amounting in the aggregate to six hundred dollars; that these notes were executed by Pearson for the accommodation of Mosely, and with the intention that they should be discounted for his benefit; that they were discounted at the time by Seay, on the rep-

Pearson v. Seay.

resentations of Pearson and Mosely, and the money was advanced on them to Mosely; and that the deed from Mosely to Pearson was intended merely as a mortgage to secure Pearson against his liability on the notes.

The deposition of Mosely was taken under an order of court. The material parts of his testimony are the following: "Seay was present when I made the sale of the land to Pearson. The understanding was, that he was to *shave* the notes given in consideration of the land; and he did *shave* them on the spot. There was no conversation between him and Pearson, in my presence, about the payment of the notes. He received the notes immediately on their execution by Pearson." "The sale was considered incomplete until the assignment of my wife's dower, and Seay was a witness to that fact. I was not indebted to Pearson at the time of the transaction. The notes were made for the purpose of negotiation with Seay, and to raise money on the same. The deed that I gave Pearson was to indemnify him for the use of his name, to enable me to raise money; it was for no other object than his security. Pearson expected to hold the land, provided I did not pay back the money. I retained possession of the land. Pearson demanded possession, but never took it. He merely took titles from me to secure him from liability on the notes I traded to Seay." "The notes were made with the view of my trading them to Seay. Pearson made them with that expectation, and himself went after Seay, to buy the notes and draw the writings; and he told Seay, that the notes were good, and to trade for them." "Pearson refused to stand my security without a sale of the land. I was at liberty to use the notes as I wished. It was optional with Pearson, so far as I was concerned, whether he retained the land or not. It was not a fair valuation of the land. The right was reserved to me to take back the land, if I paid the notes."

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellant.
JEFF. BUFORD, contra.

A. J. WALKER, C. J.—The only question presented on
the former appeal in this case, was, whether the complain
ant's bill contained equity. It was then decided, that the
facts alleged in the bill evidenced a sale of land to the com-
plainant in consideration of his notes, subject to a right to
re-purchase in the vendor ; and that the complainant was
entitled to relief against the holder of the notes for the
purchase-money, on account of the fraud in the sale. The
material facts upon which our decision was predicated,
were, that the complainant executed his notes for six hun-
dred dollars ; that the notes were assigned for the purpose
of raising money, and that the deed to complainant con-
tained a stipulation, that it should be void upon the pay-
ment at a specfied day, by the grantor to the grantee, of
six hundred dollars. We rested our decision upon the
absence of any obligation on the grantor to pay the notes,
or protect his grantee against their payment, and on the
anomaly which would be presented, by assuming that the
grantor and grantee became reciprocal debtors to each
other, in the sum of six hundred dollars, and that the
grantor secured the payment of his debt by mortgage.

The case is now before us upon appeal from a decree
upon the case made by the proof and pleadings. The evi
dence shows, that the notes of the complainant were exe-
cuted for the accommodation of the payee, to be discounted
by the defendant Seay, for the payee ; and that the land
was conveyed for the purpose of securing and indemnify-
ing the complainant against the notes executed for the
accommodation of the payee. It thus appears that the
maker of the deed was under an obligation to protect the
complainant against his notes, and that the deed was de-
signed merely to operate as a security to him against the
payment of the notes. The two points upon which our
former decision was placed, are thus met, and obviated.
Under the proof, the grantor was under an obligation, the

performance of which might be secured ; the deed was intended to afford the security ; and the anomaly mentioned does not exist; for there is only a debt by the complainant, and an obligation upon the grantor in the deed to protect him against it. It is plain that the transaction, as explained by the proof, is a mortgage. In support of this proposition, we refer to the cases cited in *Pearson v. Seay*, 35 Ala. 612.

The misrepresentation of the mortgagor, as to the title to land mortgaged for the indemnity of the mortgagee, can afford no ground for equitable relief against the holder of the note given by the mortgagee to enable the mortgagor to raise money.

Affirmed.