# Smith *et al. v.* Murphy *et al.*

### *Bill in Equity to Redeem Land.*

1. *Heirs necessary parties to bill seeking to divest them of their title.*—When a bill to redeem lands seeks to divest the title out of the heirs of decedent, and vest the same in complainants, it is indispensable—to obtain the relief sought—that such heirs should be made parties defendant.

2. *Deed absolute on its face; vests legal title.*—Where A. executes a deed of lands to B., conveying, on its face, the absolute title in fee simple, the legal title passes to B , and, on his death, descends to his heirs, notwithstanding a separate agreement between A. and B., wherein B. obligated himself to allow A. to redeem within two years, on the payment by him of a debt due B., for which the deed was executed.

3. *One seeking equity must do equity.*—It is an inflexible rule that where a party is forced to seek equity, he must do equity.

APPEAL from the Chancery Court of Tuscaloosa.

Heard before the Hon. N. S. GRAHAM.

The bill, in this case, was filed by William Murphy, and Thomas J. Murphy, and avers (1), that on the 13th of March, 1873, said Thomas J. Murphy was in possession, and was the equitable owner of a certain tract of land (described in the bill), but that the title thereto was in said William Murphy, he being the father of said Thomas J. Murphy; that on said day the said Thomas J. Murphy borrowed from one John C. Tanner the sum of $400, payable November 1, 1873, and agreed to secure the eventual payment by him on said land ; that, accordingly, William Murphy, as the title was in him, executed and delivered to said Tanner his promissory note and a mortgage on said land, payable November 1, 1873,— Eliza Murphy, the wife of said William Murphy, joining in the execution of the mortgage and note. (2). That when the said note and mortgage became due they were unable to pay the same, and under the pressure brought to bear upon them by the said Tanner, they, on the 12th of November, 1873, executed to him a deed, unconditional on its face, in fee simple, to said land, but on the same day, and as a part of the same transaction, the said Tanner executed to William Murphy his certain written agreement; wherein, after reciting the fact of his¹ having had a mortgage on said lands, and the failure to pay as has been hereinbefore set out, binds himself, upon the repayment of said debt, to allow said William Murphy to redeem said land within the time allowed by law. (3). That at the time of said last transaction—the

12th of November, 1873,—and as part of the same, the said Thomas J. Murphy, the *cestui que trust* of said land, and who had borrowed the money, executed and delivered unto said Tanner a mortgage for the sum of $95, on one gray mare and a buggy, and three milch cows. (4). That Thomas J. Murphy has paid, on said indebtedness, the following sums of money: In November, 1874, $30; January, 1875, $120, and subsequent thereto the further sum of $30—the first two payments being evidenced by written receipts attached as exhibits. (5). That said Tanner died in 1874, leaving a will appointing A. J. Grimmett, and H. P. Smith, his executors. (6). That said executors contend that said transaction gave their intestate a perfect and indefeasible title to said land without the present right of redemption, and have demanded possession thereof, and also of said mare, buggy and cows; and they assured complainant, Thomas J. Murphy, that they were going to take legal steps thereto; that they have brought an action of detinue against said Thomas J. Murphy, in Tallapoosa county, for said stock, and obtained a writ of seizure therefor, and given a written notice demanding possession of said land; that complainants have asked said executors for permission to sell a portion of said land to raise the balance of said money, but they positively refused, and asserted that even if the balance of the money was offered to them they would not allow complainants to redeem. (7). The bill prays that, upon final hearing, the chancellor may decree that said transactions, together, constitute only a mortgage, and that complainants may be entitled to redeem said land; that the same may be sold for the purpose of paying to the said A. J. Grimmett, and H. P. Smith, the balance due them on said land, and complainants "hereby expressly offer to pay said executors what, in equity and good conscience, they ought to pay;" and for general relief. The bill then prays that subpœnas may be directed to said executors making them parties defendant, but does not seek to make the heirs of said Tanner parties. The bill also prays for an injunction against said executors to restrain them from proceeding at law to sell and dispose of said land and personal property.

The respondents answered the bill, in substance, as follows: 1. They admit that Thomas J. Murphy was in possession of the lands, described in the bill, on the 13th of March, 1873, but deny that he was the equitable owner thereof, and aver that he was only a tenant at sufferance of the said William Murphy, his father. They deny that said Thomas Murphy, on the 13th of March, 1873, borrowed of said Tanner $400, or any other sum, or secured the payment thereof

[Smith et al. v. Murphy et al.]

by a lien on said land. They state that on or about the 13th of March, said William Murphy borrowed of said Tanner a sum of money—$500—and made his note and mortgage on said land to secure the payment thereof—true copies of which are exhibited with complainant's bill. 2. That said deed, executed by William Murphy, and wife to said Tanner, is in fee simple, and without condition, which transaction respondents aver "to have been a fair and *bona fide* sale of said land to said Tanner, by said Murphy." Respondents admit the "obligation made by said Tanner agreeing to allow said Murphy to redeem said land in two years, but they aver that William Murphy wholly failed to redeem the same in accordance with the agreement; that the respondents frequently requested him to do so soon after the two years had expired. 3. Respondents say that they knew nothing of Thomas J. Murphy being the *cestui que trust* of said land, and they most positively deny that he borrowed any money of said Tanner; that he is wholly insolvent, and could not have borrowed said money. They admit that said Thomas J. Murphy did, about the 12th day of November, 1873, make a note to said Tanner for $195, but they deny that he made any mortgage to Tanner for any amount, or that the making of said note had anything to do, or was in any wise connected with the transaction between William Murphy and Tanner; and respondents aver that said note was given to Tanner for the rent of said lands after Tanner had bought the same from William Murphy, and that in November, 1874, when said note fell due, Thomas J. Murphy made a small payment, and that he was unable to pay the balance of said note, and asked for indulgence, which respondents granted, and took a mortgage to secure the payment thereof, which is attached to the answer as an exhibit. 4. They admit the averments of the fourth paragraph of the bill, but aver that the payments were made with the understanding that the balance of the redemption money should be paid to them, which has not been done. 5. Respondents admit the allegations contained in the fifth paragraph. 6. They admit that they claim the transaction detailed in the sixth paragraph gave to their intestate a perfect and indefeasible title to said land, and that they have demanded possession thereof, also of the property described in the mortgage, and that they are also taking legal steps to obtain the possession thereof, which they aver in right they ought to have, but they most positively deny that they have refused the complainants the privilege of selling off a part of said lands to raise the money to redeem the same; but, on the contrary, they state that money shown to have been made

by the receipts exhibited, was raised by a sale of a part of said land to one Sharpe, and that the proceeds of said sale is the one that has been paid thereon. They also deny that they have asserted that if the balance of the money was offered them, they would not take it, and the complainants well know that such allegation is untrue.

Having answered the bill, the respondents assigned the following grounds of demurrer: 1st. Want of equity; 2d, misjoinder of parties complainant; 3d, want of proper parties defendant; 4th, multifariousness; 5th, that the allegations are so uncertain that the court could not decree relief to any of the complainants.

On hearing, the chancellor overruled the demurrers, and adjudged that the complainants were entitled to relief, and ordered a reference to the register and that he determine: 1st, how much money was actually borrowed of defendant's testator, in his life-time, on the note and mortgage in the pleadings mentioned, and the time; 2d, what payments, if any, have been made by the complainants, or either of them, the amounts and dates of such payments, and state the account and strike a balance and allow interest to either party. The chancellor further held the deed in question to be a mortgage only, with the right of complainants to redeem by the payment of such balance as the register may report to be due from complainants on account of said borrowed money, if any. He also declared the mortgage, made by Thomas J. Murphy and Martha J. Murphy, to be void, the same being to secure a note, which by the bill (as amended, and the proof) is shown to be usurious.

The register reported, after due notice and testimony: 1st, that complainant received on or about March 13, 1873, from said Tanner, deceased, the sum of $400; 2d, that T. J. Murphy paid to defendant, Smith, $130 on November 15, 1874, and on the 15th of January, 1875, said Murphy paid said Smith $120, and about February 1, 1875, $30—aggregating $280; 3d, that the balance received by Murphy from Tanner, after deducting said payments, amounts to $120.

The chancellor rendered his final decree sustaining the register's report.

Appellants now assign as error: 1st, overruling the demurrers; 2d, in decreeing the deed to be a mortgage; 3d, in rendering the decree.

W. D. BULGER, for appellants.—1. The third ground of demurrer should have been sustained; this action involved the titles to real estate, as shown by the bill in which the heirs of John C. Tanner were interested, and they should

have been made parties. Lands descend directly to the heirs of decedents —Revised Code, § 1888.

2.   The fourth ground of demurrer should have been sustained.   The bill shows that the deed made by William Murphy and wife was entirely different and disconnected with the mortgage made by Thos. J. Murphy and wife, involving different rights as to property and persons. *Colburn et al. v. Broughton et al.* 9 Ala. 351 ; *Chapman v. Chinn,* 5 Ala. 397.

3.   To convert a conveyance, absolute on its face, into a mortgage, the *intention* and *understanding* of both the parties, to that effect, must concur ; the fact that the party who executed the conveyance so understood it, is not sufficient. *West and Wife v. Hendrix,* 28 Ala. 226,—and the complainant must show this *affirmatively.*—*McNeils v. Norsworthy,* 39 Ala. 156.   The fact that complainant fails to examine the subscribing witnesses to the deed, will justify the court in looking to the proof of other witnesses with greater jealousy and stricter scrutiny.—*Hatfield v. Montgomery et al.* 2 Port. 58.

4.   In this case, a pre-existing debt existed between William Murphy and Tanner, but all the proof shows that the evidence thereof was given up on the purchase of the bond, and the debt satisfied.   In such a case, the deed made to the land in consideration of the satisfaction of the mortgage, can not be converted into a mortgage.—*McKinstry v. Conly,* 12 Ala. 678.

5.   A debt is necessary to the existence of a mortgage.   If none exists the transaction can not be deemed a mortgage. If, as the facts show, the complainant, William Murphy, was in debt to J. C. Tanner, now deceased, and the debt was secured by mortgage on land, and in satisfaction and payment of said debt and satisfaction of the mortgage, Murphy sold to Tanner the land, and executed his deed to the same, and Tanner agreed he should have two years to redeem the land, as if sold under the mortgage, the deed can not take effect as a mortgage.— *West and Wife v. Hendrix,* 28 Ala. 226; *Freeman v. Baldwin,* 13 Ala. 246 ; *McKinstry v. Conly,* 12 Ala. 678.

H. C. LINDSAY, *contra.*   (No brief came to Reporter.)

STONE, J.—There are two points upon which the decree in this cause must be reversed.   The deed of November, 1873, from Murphy and wife to Tanner, vested the legal title to the lands in the latter.   When he died, the title descended to his heirs.   The bill seeks to divest the title from Tanner's heirs, and vest it in complainant, Thomas J. Murphy.   To

maintain such bill, and to obtain such relief, it is indispensable that the heirs of Tanner should be parties.—Sto. Eq. Pl. § 188; *Moore v. Murrah,* 40 Ala. 573; 1 Brick. Dig. 753, §§ 1687, 1695; Ib. 755, § 1731; Ib. 756, §§ 1743, 1745; *Kennedy v. Kennedy,* 20 Ala. 571; *Jennings v. Jennings,* 9 Ala. 286; *Thompson v. Campbell,* 57 Ala. 183.

By executing an absolute deed to Tanner, the complainants armed him with a legal advantage, and rendered it necessary, if they would assert their alleged equity, that they become actors in the litigation. Being forced to seek equity, the rule is inflexible that they must offer to do equity; and if any balance of principal is found due from Murphy to Tanner, such balance bears the statutory rate of interest. *Pearson v. Bailey,* 23 Ala. 537; *Hunt v. Acre,* 28 Ala. 580; 1 Sto. Eq. Ju. § 64e.

It follows, from what is stated above, that the pleadings in this cause must be amended, by making new parties defendants; and this will render it necessary to retake the testimony. Upon certain points, we would prefer that the testimony should be fuller. We mention three, and counsel may discover others:

*First.* Whether, when the deed was made to Tanner, the note and mortgage were cancelled, or what disposition was made of them.

*Second.* When parts of the land were subsold, the proceeds of which, it is alleged, constituted the partial payments to the executors, with whose consent and approbation, if any, was this done? Had Tanner any, and what connection with this transaction?

*Third.* Under what contract of renting, or otherwise, were the lands held and occupied during the year 1875?

As bearing on the main question in this cause, see *McKinstry v. Conly,* 12 Ala. 678; *Eiland v. Radford,* 7 Ala. 724; *Williamson v. Culpepper,* 16 Ala. 211; *Robinson v. Farrelly,* 16 Ala. 472; *Turnipseed v. Cunningham,* Ib. 501; *Locke v. Palmer,* 26 Ala. 312; *West v. Hendrix,* 28 Ala. 226; *Peeples v. Stolla,* 57 Ala. 53; *Pearson v. Seay,* 35 Ala. 612; s. c. 38 Ala. 643; *Davis v. Hubbard,* Ib. 185; Code of 1876, § 2199.

We abstain from expressing an opinion on the merits of this controversy, because the facts are not fully before us.

Reversed and remanded.